4-5219                                        121 S. W. 2d 77.

Opinion delivered October 31, 1938.

Pearson & Pearson, for appellant.

Partain & Agee, Tom J. Terral, for appellee.

McHaney, J.   On October 2, 1934, appellant, Southern Kansas Stage Lines Company, hereinafter called the company, purchased from one L. G. Roark his bus line running from Fayetteville to Harrison over highway 62 and from Harrison to Little Rock over highway 65, Roark being licensed to so operate, including buses, equipment and garage equipment.   Three days later, on October 5, the company sold the buses and garage equipment, then located at Fayetteville, to one A. W. Shepherd of Muskogee, Oklahoma, and made a written contract with Shepherd to operate his buses over said route for 80 per cent of the gross receipts from operations, under which contract Shepherd was required to maintain said buses in good serviceable condition at his own expense. In order to be able to keep the buses in good operating condition at the least expense, he moved his garage equipment from Fayetteville to Little Rock and opened a garage on West 7th street where he serviced his own

.buses, and occasionally serviced buses for the company. Shepherd rented the building, paid the rent, hired appellant, Otis James, as foreman of the shop, hired appellee as a mechanic and other employees either in person or through Otis James, and paid them all by checks drawn by him on his own bank account in First National Bank of Muskogee, Oklahoma, and signed A. W. Shepherd. Bus Lines by A. W. Shepherd.

The above-mentioned written contract provides in paragraph 1 as follows: "That second party (the company) hereby employs first party (Shepherd) to conduct the bus passenger operations heretofore conducted by L. G. Roark between Fayetteville and Harrison, Arkansas, over highway 62 and between Harrison and Little Rock, Arkansas, over highway 65, and first party agrees to conduct such operation in the name of and on behalf of second party."

The buses operated by Shepherd were operated under the name of the company, with the sign painted on them "Santa Fe Trails System" which was required by the contract.

On the night of June 19, 1936, appellee claims that he was injured, receiving a right inguinal hernia, when he and appellant James were pushing a car out of the garage, the car doors being locked, so that they could not start the motor, and run it out on its own power, and that said James carelessly and negligently pushed the car onto appellee, causing the injury aforesaid. He brought this action to recover damages from appellants in the sum of $60,000. Appellants filed separate answers denying all the allegations of negligence and pleading assumed risk. Trial to a jury resulted in a verdict and judgment against appellants in the sum of $12,500. Hence this appeal.

At the conclusion of the evidence for appellee, and again at the conclusion of all the evidence, each appellant asked for and was refused a directed verdict. The refusal of the court to so do is the principal assignment argued for a reversal of the judgment. We agree with appellants in this contention. Certainly there can be no liability as against the company under the doctrine of

respondeat superior, because the undisputed evidence shows that appellant James was not its employee. Neither was appellee nor the other employees in the garage employees of the company. The latter had nothing to do with that garage. It did not own or operate it. It did not employ any of the men working therein. It did not pay them. It exercised no control whatever over it or any one working therein. It is true that Shepherd owned it, and that he was an employee of the company, according to the contract, in the operation of the buses over the designated route. The same contract required him to keep the buses in good operating condition, at his own expense. They were his buses. He bought three of them from the company. He operated them in the name of the company over its route, but the garage was his business. He might have serviced his buses at some other garage, if he chose. It was a matter of no concern to the company. The fact that Shepherd was an employee of the company did not have the effect of making his employees in the garage employees of the company. We are, therefore, of the opinion that the company is not liable in this action.

There is still another reason why the company is not liable, and that is that appellant, James, even though an employee of the company, was not shown to be negligent in any particular.

Appellee says he and James were pushing a car out of the garage, he in the front and James in the rear, and that the latter, without warning or notice pushed the car onto and into him, injuring him as alleged. Just how they were going to push it out opposing each other is not explained. Aside from the fact of the probable impossibility of pushing by hand, single handed and alone, a car with such speed, force and violence from an immobile position so as to do the damage complained of, being difficult of comprehension, especially so when appellee was pushing in the opposite direction, the evidence shows that appellee was called to assist James in pushing the locked car out of the garage. He must have known the car was to be pushed out, as this was the purpose for which he was called. He must have known that,

if he got in front of a rapidly pushed car, it was likely to injure him. It, therefore, appears that the only negligence shown, if any, was that of appellee. Appellant, James, was not negligent in pushing it, nor in applying sufficient force in order to move it out. Hence there is no liability on the part of either appellant.

Moreover, it is very doubtful if appellee received any injury, even though he was struck. He continued his work in the garage, drawing the same salary until sometime in February, 1937, approximately eight months, this suit being instituted February 27, 1937. During all this time, he did not consult any physician or receive any medical treatment, and not until May 27, 1937, was he examined by physicians, and then at the instance of appellants. He was examined by Drs. Jones and Blair of Fort Smith, both of whom testified that they could find no injury, and very positively that at that time he did not have a hernia. They, also, said that if he received an injury on June 19, 1936, sufficient to cause a hernia, it would have developed before the date of their examination. This evidence is undisputed. He was examined by Dr. Scroggins, for appellee, on February 21, 1938, just before the trial, and he testified he found him suffering at that time. He said: "I found this man to show feminine characteristics and found him to be very nervous, and on physical examination I found his heart and lungs to be negative, urine negative, and I found a right inguinal hernia that had not come through the external ring, but produced pressure on the Spermodic Cord." It was his opinion that the injury could come from a blow, and that it was permanent.

We are, therefore, of the opinion that the court should have directed a verdict for appellants. The judgment is reversed, and the cause, having been fully developed, is dismissed.